UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DENNIS PRICE AND ROBERT SHOLAR        CIVIL ACTION

VERSUS

PCS NITROGEN FERTILIZER, L.P.
AND PCS NITROGEN FERTILIZER
OPERATIONS, INC.                      NO. 03-153-RET-DLD

## RULING ON MOTION FOR JUDGMENT AS A MATTER OF LAW

This matter is presently before the Court on a Motion for Judgment as a Matter of Law raised by defendant, PCS Nitrogen Fertilizer, L.P., during trial. Plaintiffs, Dennis Price and Robert Sholar, oppose the motion (Doc No. 142). Jurisdiction is allegedly based on diversity, 28 U.S.C. § 1332. The Court, having reviewed the record, the law, and the arguments of the parties, now concludes that the defendant's motion should be **GRANTED** for the following reasons.

## BACKGROUND

Plaintiffs filed suit against defendants on January 27, 2003, alleging harassment and retaliation claims in violation of the anti-retaliation provisions of La. R.S. 30:2027, the Louisiana environmental whistleblower provision, and La. R.S. 23:967, Louisiana's general anti-reprisal statute. Plaintiffs contend that PCS, their employer, harassed and retaliated against them in the following ways: poor performance evaluations; demotions; untimely pay raises; reduction of the workforce and extra responsibilities; loss of supervisory authority; public

Doc#1847

statements that they were bad employees; unsuccessful and harassing audits of the lab to find reasons to fire them; outsourcing lab samples to eliminate duties which ultimately resulted in their demotions; tapping Price's business telephone line and/or conducting other surveillance; and various other acts of harassment and retaliation.

On October 27, 2004, PCS Nitrogen Fertilizer, L.P. and then-defendant, PCS Nitrogen Fertilizer Operations, Inc., filed Motions for Summary Judgment to Dismiss the Claims of Robert Sholar and Dennis Price (Docs. No. 28 & 32). In those Motions, defendants argued, *inter alia*, that plaintiffs' claims for any retaliatory conduct occurring prior to January 27, 2002, one year before suit was filed, were prescribed. Plaintiffs submitted opposition on November 15, 2004 (Docs. No. 41 & 43), arguing that defendants engaged in a pattern of harassment and retaliation toward them which spanned in time from 1995 to the present, and that their claims were not prescribed pursuant to the Louisiana continuing tort doctrine which provides that: "When tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated."[1]

On September 12, 2005, this Court signed an order referring the motions

---

[1] **Louisiana AG Credit, PCA v. Livestock Producers, Inc.**, 42,072 (La. App.2d Cir.4/4/07), 954 So.2d 883, writ denied, 2007-1146 (La.9/14/07), 963 So.2d 1001 (citing **Bustamento v. Tucker**, 607 So.2d 532 (La.1992); **Stett v. Greve**, 35,140 (La.App. 2d Cir.2/27/02), 810 So.2d 1203).

for summary judgment to United States Magistrate Judge Docia L. Dalby for report and recommendation. On March 24, 2006, Magistrate Judge Dalby issued a report recommending that defendants' Motions for Summary Judgment be granted and that all claims be dismissed (Doc. No. 58; hereinafter "Initial Report"). In the Initial Report, the Magistrate Judge concluded that the Louisiana continuing tort doctrine did not apply to save plaintiffs' otherwise prescribed claims because (1) plaintiffs were aware of their legal rights as early as 2000; (2) there was no support for plaintiff's argument that a hostile work environment claim was actionable under the Louisiana anti-retaliation statutes; and (3) plaintiffs suffered a series of discrete actions.

After reviewing the Magistrate's Report and Recommendation, this Court issued an order on April 6, 2006, referring this matter back to the Magistrate Judge for further proceedings (Doc. No. 61).  On July 18, 2006, the Magistrate Judge issued an Amended Report recommending that all claims against PCS Nitrogen Fertilizer Operations, Inc. be dismissed, and summary judgment be denied to PCS Nitrogen Fertilizer, L.P. (Doc. No. 71; hereinafter "Amended Report").  In the Amended Report, Magistrate Dalby found that prescription had not accrued because the law had changed since the issuance of the Initial Report.  Specifically, Magistrate Dalby noted that retaliation claims which once required an allegation of an "ultimate employment decision" or a discrete act, could now be based upon harassment in the form of actions or inactions,

regardless of whether they involve an ultimate employment decision. Therefore, Judge Dalby concluded that material issues of fact precluded a finding that the plaintiffs' claims had prescribed, as plaintiffs presented evidence of a pattern of deliberate, repeated harassment over a period of time sufficient to survive summary judgment. This Court adopted the Amended Report as its own opinion on August 15, 2006 (Doc. No. 74).

Trial on this matter began March 1, 2010. At the conclusion of the testimony of both plaintiffs, defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. Under this motion, defendant contends that plaintiffs' claims are based upon a series of discrete acts which cannot form the basis of a continuing tort, and that all of plaintiffs' claims based upon pre-January 27, 2002, acts, are prescribed. Plaintiffs contend that they suffered from on-going acts of harassment and retaliation that did not individually rise to the level of a tort, and that, under the Louisiana continuing tort doctrine, prescription did not commence until the date of the last incident or abatement of defendant's course of conduct. Plaintiffs also argue that they delayed filing their lawsuit because they were cooperating with federal authorities in an on-going criminal investigation of defendant, and that the authorities requested that they delay filing their lawsuit for the sake of investigation.

## JUDGMENT AS A MATTER OF LAW

Judgment as a matter of law is appropriate after "a party has been fully

heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[2] "In evaluating such a motion, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury."[3] Although the court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe"-that is, the Court "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."[4]

## ANALYSIS

Plaintiffs' claims arise under Louisiana's whistleblower statutes, La. R.S. 30:2027 and La. R.S. 23:967; thus, Louisiana law governs.[5] To determine Louisiana law, this Court must look to "the final decisions of the Louisiana

---

[2] Fed.R.Civ.P. 50(a).

[3] **Price v. Marathon Cheese Corp.**, 119 F.3d 330, 333 (5th Cir.1997).

[4] **Reeves v. Sanderson Plumbing Prods., Inc.**, 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotations omitted).

[5] See **Krieser v. Hobbs**, 166 F.3d 736, 739 (5th Cir.1999) (holding that a federal court sitting in diversity applies state substantive law).

Supreme Court."[6] In the absence of such a decision, this Court "must make an Erie guess and determine, in [this Court's] best judgment, how that court would resolve the issue if presented with the same case."[7] Nevertheless, when a suit is filed under Louisiana employment law, federal employment discrimination and retaliation statutes and cases are persuasive authority given the substantial similarities between Louisiana's antidiscrimination law and Title VII.[8]

**I. Plaintiff's Claims are Subject to a One-year Prescriptive Period**

Louisiana courts uniformly apply a one-year prescriptive period to claims under La. R.S. 23:967.[9] Thus, claims based on violation of La. R.S. 23:967 prescribe one year from the date when the plaintiff knew of the violation. Although La. R.S. 30:2027 does not contain a prescriptive period and no Louisiana Court has addressed the appropriate prescriptive period, the Fifth Circuit applied a one year prescriptive period to this same statute, noting that a whistleblower action under La. R.S. 23:967 is akin to a tort action, a tort action

---

[6] **In Re Katrina Canal Breaches Litigation**, 495 F.3d 191, 205-06 (5th Cir.2007).

[7] **Id.**

[8] See **Trahan v. Rally's Hamburgers, Inc.**, 696 So.2d 637, 641 (La.App. 1st Cir.1997); **Plummer v. Marriott Corp.**, 654 So.2d 843, 848 (La.App. 4th Cir.1995); **Wyerick v. Bayou Steel Corp.**, 887 F.2d 1271, 1274 (5th Cir.1989); see also **Blacher v. BASF Corp.**, 177 F.3d 978 (5th Cir.1999) (unpublished) (analogizing Louisiana's "continuing tort" doctrine to the theory of "continuing violation" under federal law).

[9] See **Nolan v. Jefferson Parish Hosp. Service Dist. No. 2,** 2001-175 (La.App. 5th Cir. 6/27/01), 790 So.2d 725 (employee's wrongful termination claim under La. R.S. 23:967 was governed by the general one year prescriptive period for delictual actions).

prescribes in one year, and that Louisiana courts have applied a one year prescriptive period to other types of retaliatory discharge claims.[10] Moreover, the parties do not dispute that a one-year liberative prescriptive period applies to the plaintiffs' claims. Therefore, this Court will apply a one-year prescriptive period to plaintiffs' La. R.S. 30:2027 and La. R.S. 23:967 claims.

## II. The Continuing Tort Doctrine is Inapplicable to Conduct Occurring Prior to January 27, 2002.

In support of their argument that the plaintiffs' claims are prescribed, the defendant cites plaintiffs' deposition testimony that both Sholar and Price, by August, 2000, believed the defendant was retaliating against them for whistleblowing, and were aware of their legal recourse. While the plaintiffs do not contest the defendant's timeline of events, they argue that the continuing tort doctrine applies.

The continuing tort doctrine provides that when tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated.[11] The principle of a continuing tort applies only when continuous conduct causes continuing damages.[12] The continuous nature of the conduct complained of has the dual effect of rendering

---

[10] **Guldin v. Concoco, Inc.**, 2002 WL 1220015, *2, n. 2 (5th Cir.2002) (citing **Maquar v. Transit Mgt. Of Southeast La., Inc.**, 593 So.2d 365, 366 (La.1992)).

[11] **Bustamento v. Tucker**, 607 So.2d 532 (La.1992); **Stett v. Greve**, 35,140 (La.App. 2d Cir.2/27/02), 810 So.2d 1203.

[12] **Id.**

such conduct tortious and of delaying the commencement of prescription.[13] In **Bustamento**, the Louisiana Supreme Court looked to federal jurisprudence interpreting the "continuing violation doctrine" for support when analyzing its own "continuing tort doctrine;" therefore, it stands to reason that the two must have similar, if not the same, theoretical underpinnings. Indeed, the Fifth Circuit has used the two interchangeably on multiple occasions.[14] Therefore, this Court will examine plaintiff's claims under the federal "continuing violation doctrine."

In **National Railroad Passenger Corp. v. Morgan**, the Supreme Court reaffirmed the application of the continuing violation doctrine for hostile work environment claims.[15] "The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period."[16] This "doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to

---

[13] **Bustamento v. Tucker**, 607 So.2d 532.

[14] **Waltman v. International Paper Co.**, 875 F.2d 468 (5th Cir.1989); **McGregor v. Louisiana State University Board of Supervisors**, 3 F.3d 850, 866 (5th Cir.1993); **Davis v. Louisiana State University**, 876 F.2d 412, 413 (5th Cir. 1989); **Thomas v. Exxon Corp.**, 252 F.3d 436 (5th Cir. 2001) (unpublished); **Blacher v. BASF Corp.**, 177 F.3d 978 (5th Cir.1999) (unpublished).

[15] **National Railroad Passenger Corp. v. Morgan**, 536 U.S. 101, 115-18, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002).

[16] **Celestine v. Petroleos de Venezuella SA**, 266 F. 3d 343, 351 (5th Cir.2001) (citing **Messer v. Meno**, 130 F. 3d 130, 135 (5th Cir.1997))(emphasis added).

demonstrate an organized scheme led to and included the present violation."[17] Further, the doctrine "'requires the same type of discriminatory acts to occur both inside and outside the limitations period,' such that a valid connection exists between them."[18]

The Fifth Circuit has warned against using "the continuing violation theory 'to resurrect claims about discrimination concluded in the past, even though its effects persist.'"[19] In **Berry v. Board of Sup'rs of L.S.U.**, the Fifth Circuit identified at least three factors that may be considered in determining if a continuing violation exists: (1) Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? (2) Are the alleged acts recurring or more in the nature of an isolated work assignment or incident? (3) Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights?[20] Concerning the third factor, "[t]he focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights, or when he should have perceived that discrimination was occurring."[21] The **Berry** court emphasized this

---

[17] **Celestine**, 266 F. 3d at 351.

[18] **Id.** (quoting **Martineau v. ARCO Chem. Co.**, 203 F. 3d 904, 913 (5th Cir.2000)).

[19] **Berry v. Board of Supervisors of L.S.U.**, 715 F.2d 971, 979 (5th Cir.1983) (quoting **Delaware State College v. Ricks**, 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1977)).

[20] **Huckabay v. Moore**, 142 F.3d 233, 239 (5th Cir.1998).

[21] **Id.** at 238 (quoting **Messer**, 130 F. 3d at 134-135).

factor as "perhaps of most importance," and several other circuit courts have agreed.[22] Moreover, a similar principal has been recognized by the Louisiana Supreme Court in **Eastin v. Entergy Corp.**, where the Court rejected plaintiff's argument that prescription had not accrued in an age discrimination suit:

> "The rule in an employment discrimination case is that the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act... This rule of law is grounded on a solid foundation: when an employee knows that he has been hurt and also knows that his employer has inflicted the injury, it is fair to begin the countdown toward repose. And the plaintiff need not know all the facts that support his claim in order for countdown to commence."[23]

Recognizing this principle, in **Dumas v. Town of Mount Vernon**, the Fifth Circuit rejected plaintiff's allegations of a continuing violation, and upheld the dismissal of a Title VII claim because the plaintiff had filed an identical charge with the EEOC years earlier, indicating that she knew that a violation had occurred.[24]

---

[22] See **Glass v. Petro-Tex Chem. Corp.**, 757 F.2d 1554, 1561 n. 5 (5th Cir.1985) ("core idea"); **Sabree v. United Bhd. of Carpenters & Joiners Local No. 33**, 921 f.2d 396, 402 (1st Cir.1990) ("the most important"); **Hendrix v. City of Yazoo City**, 911 F.2d 1102, 1104 (5th Cir.1990) ("key to the inquiry"); **Selan v. Kiley**, 969 F.2d 560, 566 n. 7 (7th Cir.1992) (compiling this list of cases).

[23] **Eastin v. Entergy Corp.**, 865 So.2d 49, 54-55 (La.2004) (citing **Morris v. Government Development Bank of Puerto Rico**, 27 F.3d 746, 749-51 (1st Cir.1994)).

[24] See **Dumas v. Town of Mount Vernon Alabama**, 612 F.2d 974, 979-80 (5th Cir. 1980) (overruled on other grounds); see also **Anderson v. City of Dallas**, 116 Fed. Appx. 19, 25-28 (5th Cir. 2004) (unpublished) (refusing to apply the continuing violation doctrine and equitable tolling to revive plaintiff's previously asserted and untimely pursued EEOC claims where there was no showing that plaintiff had been unaware of the alleged discriminatory conduct); **Conlin v. Blanchard**, 890 F.2d 811, 815 (6th Cir.1989) (holding that plaintiffs who had previously filed state-law actions evidencing knowledge of their claims were not entitled to have the limitations period extended under the continuing violation doctrine).

In the instant case, although plaintiffs had not previously filed suit on their current claims, they had consulted with their attorney in anticipation of litigation and were clearly aware that a violation had occurred by August, 2000, and remained aware of their rights up to January 27, 2002, one year prior the date plaintiffs' filed suit. For example, Dennis Price drafted and sent a memorandum dated August 3, 2000, to Thad Prather, the Lab Manager of PCS at the time, in which Price stated that he was going to have his attorney contact corporate personnel about harassment issues and that "the Louisiana Revised Statutes furnishes protection to employees who have reported environmental violation to the regulatory authorities. Please see R.S. 30:2027."[25] Additionally, during deposition, Robert Sholar testified that he believed that PCS was harassing and retaliating against him, in violation of law as of August of 2000:

> Q. Is it fair to say that, by August 29, 2000, based on events that you are aware of, you concluded that PCS was harassing you?
>
> A. Sure.[26]
>
> * * * * *
>
> Q. So when you put all this together, by August of 2000, you concluded there was this pattern of harassment?
>
> A. Oh, yeah. I probably concluded it was before then, but, I mean, it was - it was rather - getting more and more evident as time passed.
>
> Q. By August you were sure?

---

[25] Record Document No. 93-2, p. 20.

[26] Record Document No. 93-2, p. 120.

A. Yes.[27]

Plaintiffs confirmed these statements at trial. Specifically, on direct examination, when asked about the August 3, 2003, memo to Thad Prather, Dennis Price testified:

> Q. What does this memo – What are you telling to Mr. Prather at this time? What does it state?[28]
>
> A. I am telling Mr. Prather that I feel like I've been harassed and that – I'm letting him know that I did talk to the regulatory agencies. That's why I told him that I was protected under the regulations because I felt at this point that I had to bring up I needed protection, that the things that happened to me up to this point were growing and growing, and I felt like if I couldn't document what was happening to me, then I could just be terminated and lose my job and lose my life earnings.[29]

On cross-examination, Mr. Price further explained the extent of his knowledge regarding his rights:

> Q. So you were talking right here in August of 2000 about contacting your lawyer. You knew your legal rights at that time; right?
> A. Yes, I did.
> Q. And you didn't file your suit until January 27, 24, 2003; correct?
> A. Correct.[30]
>
> * * * * *
>
> Q. So you're making it clear to the company on August 3, 2000, that you knew you had legal rights –

---

[27] Record Document No. 93-2, p. 121.

[28] Direct Examination of Dennis Price, Transcript of 3/2/2010, p. 72.

[29] **Id.** at p. 72-73.

[30] Cross Examination of Dennis Price, Transcript of 3/8/2010, p. 31.

A. Yes, I did.[31]

* * * * *

Q. So you are telling the employer that here's the law – you are even giving them the law; correct?
A. Yes, I did.
Q. Because you looked it up and you knew it; correct?
A. Yes, I did.
Q. And you told them that you were protected; correct?
A. Yes, I did.[32]

Given these facts, and the equitable underpinnings of the continuing tort and continuing violation doctrines, this Court refuses to invoke the doctrines to benefit those who knew their rights were being violated and yet did not act in a timely manner to assert those rights. For the Court to now allow plaintiffs to invoke the continuing violation theory to save claims arising from conduct occurring prior to January 27, 2002, would effectively read the limitations periods out of La. R.S. 30:2027 and 23:967. Such a result is untenable.

## III. Plaintiff's Claims Based Upon Pre-January 27, 2002, Conduct are Neither Subject to *Contra Non Valentem* nor Equitably Tolled

Plaintiffs argue that they delayed filing their lawsuit because they were cooperating with federal authorities in an on-going criminal investigation of defendant, and that the authorities requested that they delay filing their lawsuit for the sake of investigation. Although plaintiffs do not specifically address the

---

[31] Cross Examination of Dennis Price, Transcript of 3/8/2010, p. 32.

[32] **Id.**

relevance of this contention, except to mention that this is a "special circumstance," the Court finds that this request did not interrupt or suspend the running of prescription under the doctrines of *contra non valentem* and equitable tolling.

### A. *Contra Non Valentem* is Inapplicable

Louisiana courts created the doctrine of *contra non valentem*, as an exception to the general rules of prescription.[33] The doctrine is contrary to the express provisions of the Civil Code.[34] "The principles of equity and justice which form the mainstay of the doctrine, however, demand that under certain circumstances, prescription be suspended because plaintiff was effectually prevented from enforcing his rights *for reasons external to his own will*."[35]

Generally, the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of the following four categories:

> 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> 3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and

---

[33] **Hillman v. Akins**, 631 So.2d 1 (La.1994); **Bouterie v. Crane**, 616 So.2d 657 (La.1993); **Harvey v. Dixie Graphics, Inc.**, 593 So.2d 351 (La.1992); **Plaquemines Parish Com'n Council v. Delta Development Co., Inc.**, 502 So.2d 1034, 1054 (La.1987).

[34] **Wimberly v. Gatch**, 635 So.2d 206, 211 (La. 1994).

[35] **Id.** (Emphasis added).

4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.[36]

Only the fourth circumstance is even remotely relevant to the instant case. However, this circumstance is clearly inapplicable because the record clearly reflects that plaintiffs's cause of action was both known and reasonably knowable by the plaintiffs. Furthermore, plaintiffs affirmatively choose not to file their case – this is not the type of case where the plaintiffs were effectually prevented from enforcing their rights for reasons external to their own will. Therefore, the doctrine of *contra non valentem* cannot save plaintiff's claims arising from conduct occurring prior to January 27, 2002.

## B. Equitable Tolling is Inapplicable

The Fifth Circuit has identified three potential bases for equitable tolling: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights.[37]

The first and third bases for tolling are not applicable to the instant case; therefore, plaintiffs must show their "lack of awareness of the facts supporting

---

[36] **Wimberly**, 635 So.2d at 211.

[37] **Manning v. Chevron Chem. Co., LLC,** 332 F.3d 874, 880 (5th Cir.2003) (citing **Blumberg v. HCA Mgmt. Co.**, 848 F.2d 642, 644 (5th Cir.1988)).

[their] claim because of the defendant's intentional concealment of them"[38] in order to receive the benefit of equitable tolling. The record in the instant case is wholly devoid of any indication that PCS intentionally concealed facts which would have alerted plaintiff to a cause of action. Indeed, it was the federal authorities, a third party, and not PCS, which lulled plaintiff into a course of inaction. Thus, plaintiffs cannot claim the benefit of equitable tolling under these facts.

## CONCLUSION

Because plaintiffs' claims involving conduct occurring prior to January 27, 2002, are not subject to the continuing violation doctrine, the doctrine of equitable tolling, or the doctrine of *contra non valentem*, the Court dismisses any and all claims that plaintiff presently asserts arising from conduct occurring before January 27, 2002.

Accordingly, for the foregoing reasons assigned,

---

[38] **Manning**, 332 F.3d at 880.

IT IS ORDERED that defendant's Motion for Judgment as a Matter of Law, requesting dismissal of plaintiffs' claims involving conduct occurring prior to January 27, 2002, is **GRANTED**.

Baton Rouge, Louisiana, this 15th day of March, 2010.

RALPH E. TYSON, JUDGE
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**