UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DENNIS PRICE AND ROBERT SHOLAR    CIVIL ACTION

VERSUS

PCS NITROGEN FERTILIZER, L.P.
AND PCS NITROGEN FERTILIZER
OPERATIONS, INC.    NO. 03-153-JJB

## RULING ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

This matter is presently before the Court on a Renewed Motion for Judgment as a Matter of Law (doc. 166) filed by Defendant, PCS Nitrogen Fertilizer, L.P. ("PCS"). Plaintiffs, Dennis Price ("Price") and Robert Sholar ("Sholar"), have filed oppositions to the motion (docs. 167 and 183), and PCS has filed a reply (doc. 184). Oral argument on the motion was held on October 24, 2011.

## BACKGROUND

This litigation involves claims filed pursuant to Louisiana Environmental Whistleblower Statute, LSA-R.S. 30:2027. On January 27, 2003, plaintiffs, Price and Sholar, filed a petition for damages in a Louisiana state court against PCS Nitrogen Fertilizer, LP and PCS Nitrogen Fertilizer Operations, Inc. Plaintiffs who were both employed at PCS alleged that in 1998, they reported to the U.S. Environmental Protection Agency ("EPA") alleged environmental violations, and these reports led to a 1999 EPA/FBI raid of PCS' Geismar facility. Plaintiffs alleged that as a result of their involvement in the environmental raid, PCS has retaliated against plaintiffs in the following manner:

For Price:

1) The 2002 lab outsourcing;
2) Price's 8/21/2002 reprimand for not completing his job description questionnaire;
3) Price's 8/2002 job description; and
4) Price's allege "demotion" on 1/24/03.

For Sholar:

1) The 2002 lab outsourcing;
2) Cheryl Chris' May 13, 2002 memo to Sholar regarding the gyp stacks; and
3) Sholar's alleged "demotion" on 1/13/03.

A jury trial was held March 1 through March 18, 2010. At the close of plaintiffs' evidence and at the close of all the evidence, PCS moved for a Judgment as a Matter of Law under Rule 50. PCS argued that plaintiffs did not present evidence of causation. PCS argued that there was no link between the environmental reporting and any employment decisions. The Court denied the Rule 50 motion, finding that there was a legally sufficient evidentiary basis for a reasonable jury to find for the plaintiffs on the remaining issues.[1]

Following the deliberations, the jury returned a verdict in favor of plaintiffs. The jury awarded Price: $75,000 for Emotional Pain and Mental Anguish and $75,000 for Loss of Enjoyment of Life. The jury awarded Sholar: $100,000 for Emotional Pain and Mental Anguish and $100,000 for Loss of Enjoyment of Life.

## RENEWED MOTION

---

[1] See Trial Transcript, March 16, 2010, p. 94.

2

PCS has now filed a Renewed Motion for Judgment as a Matter of Law. PCS contends that plaintiffs failed to present any evidence proving a casual connection between plaintiffs' alleged protected activity and PCS' employment decisions. In opposition, plaintiffs assert that the decisionmakers knew or should have known that Price and Sholar were the whistleblowers who brought about the criminal pleas entered by PCS, Ahmad Hujabre (plant manager from 1995 - 2000; Director of Project Development at PCS' headquarters from October, 2000 - June, 2002), and Mike Patterson (environmental manager January, 1995 - August, 1998). Plaintiffs assert that the information provided by Price and Sholar resulted in some of the highest fines and penalties ever paid by a chemical plant in Louisiana for violating air and water regulations of our state.

## APPLICABLE LAW

A Rule 50 judgment as a matter of law is appropriate with respect to a given issue if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [opposing] party on that issue."[2] "This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict."[3] When applying this standard, "the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh

---

[2] Fed. R. Civ. P. 50(a)(1).

[3] **Brennan's Inc. v. Dickie Brennan & Co.**, 376 F.3d 356, 362 (5th Cir. 2004).

3

the evidence, as those are jury functions."[4]

## ANALYSIS

The following factors, not necessarily exclusive, satisfy the Court that the plaintiffs' burden was met:

1) Price testified that he told Mike Patterson (the environmental manager from August, 1998 - 1999 and community affairs manager from 1999 - until termination 2001) about two or three days after he (Price) sent the Doyle Memo dated August 10, 1998, that he (Price) had gone to DEQ, looked at the numbers reported to DEQ, and knew that the numbers reported were not the same numbers that he (Price) had submitted for reporting.[5]

2) Price also testified that he sent a Memo dated August 3, 2000 to Thad Prather, the lab manager in 2000, along with sending copies to Mike Hebert, human resource manager in 2000; and Sholar, Price's immediate supervisor, wherein Price stated that "Louisiana Revised Statutes furnishes protection to employees who have reported environmental violations to the regulatory authorities. Please see R.S. 30:2027."[6]

3) Mike Patterson testified that Price had told him (Patterson) that he (Price) had spoken with someone with a reporting agency and reported something to the agency.[7] Patterson could not recall when Price told him this information or whether he (Patterson) reported the information to his supervisor, Ahamad Hujabre.

4) Jeff Moss, lab tech at Geismar's facility for 39 years, testified that after the EPA/FBI raid, he (Moss) observed conflict between PCS' management and Price and Sholar. Mr. Moss testified that he had the impression that Dennis or Doc were whistleblowers.

5) Cheryl Chris, the environmental manager from August, 2001 until present and one of the decisionmaker, testified that a few weeks after

---

[4] Id.

[5] See Trial Transcript, March 2, 2010, p. 28.

[6] See Plaintiff's Exhibit 28.

[7] See Trial Transcript, March 11, 2010, Mike Patterson's testimony, p. 79.

4

she started her employment at PCS in August, 2001, she had a discussion with Price wherein Price insinuated that he was a whistleblower.[8]

6) Cheryl Chris also testified that she began having PCS' counsel advise her before communicating with Price and Sholar because Price and Sholar were bringing up complaints that were historical, and Price and Sholar started talking about harassment and retaliation.[9]

7) Fred Elliot (Mr. Elliot), plant manager from February, 2001 through February, 2007 (his retirement) and one of the decisionmakers, testified that he was the employee who represented PCS in its three criminal pleas in various state courts in 2003 and federal court in 2002.

8) Mr. Elliot testified that he was aware of the millions of dollars in fines that PCS was responsible for as result of the guilty pleas.

9) Plaintiffs presented evidence that Ahmad Hujabre, who was employed as the plant manager, and Michael Patterson, who was employed as environmental manager, were both convicted of falsifying documents and allowing pollution at the PCS Geismar facility to occur.

10) Mr. Hujabre also testified that he served as plant manager from 1995 -2000; he then worked in the head office from October, 2000 to June 2002 as Director of Project Development; he retired in June 2002 as a permanent employee; and at the time of trial, he was operating a consulting business; and business from PCS makes up about 10 - 15 percent of Mr. Hujabre's business.

11) Cheryl Chris only offered as an explanation for the elimination of Sholar's supervisory position that Sholar took a leave of absence and he left no instructions for running the lab.[10] Chris testified that she met with the lab techs and divided up Sholar's tasks.[11] Chris testified that she then realized that the lab supervisor position was unnecessary and did not address the current lab needs.[12] Chris also testified that because of the outsourcing, they didn't really need a supervisory

---

[8] See Trial Transcript, March 11, 2010, Cheryl Chris' testimony, p. 85.

[9] Id.

[10] See Trial Transcript, March 16, 2010, Cheryl Chris' testimony, p. 64-65.

[11] Id. at 64-65.

[12] Id. at 64-65

5

position anymore.[13]

12) Cheryl Chris testified that with regard to Price's change in position, the outsourcing took away most of Price's job duties, and she realized many of the lab tech had amassed a substantial amount of vacation time, creating a need for a relief lab tech and she offered Price the position as relief lab tech.[14]

After reviewing the entire record along with the above factors and viewing the evidence and reasonable inferences in the light most favorable to the jury's determination, the Court finds that the Plaintiffs established a legally sufficient evidentiary basis for a reasonable jury to find that the decision-makers had knowledge of Price and Sholar's status as whistleblowers for the 1999 EPA/FBI raid as well as sufficient evidentiary basis for a reasonable jury to find that Price and Sholar's actions as whistleblowers motivated PCS' employment decisions. Accordingly,

IT IS ORDERED that defendant's Renewed Motion for Judgment as a Matter of Law Under Rule 50 is **DENIED**.

Baton Rouge, Louisiana, this 1ST day of February, 2012.

JAMES J. BRADY, JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[13] **Id.** at. 64-65.

[14] See Trial Transcript, March 16, 2010, Cheryl Chris' testimony, p. 64.